154

In the Matter of Arlevia Gill
WILLIAMS, Debtor.

Bankruptcy No. 83–03130–W–13.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Jan. 4, 1985.

Steven P. Callahan, Kansas City, Mo., for debtor.

ORDER CLARIFYING ORDER OF CON-
FIRMATION TO MAKE CLEAR
THAT CLAIM OF FEDERAL DEPOS-
IT INSURANCE CORPORATION IS
TO BE FULLY PAID THROUGH
THE PLAN AND DIRECTING
TRUSTEE TO CALCULATE AND
PAY AMOUNTS SUPPLEMENTAL
TO TAX REFUNDS FROM REGU-
LAR PAYMENTS

DENNIS J. STEWART, Chief Judge.

This court formerly issued its order on July 26, 1984, providing in the following terms that the claim of the Federal Deposit Insurance Corporation should be paid 100% through the debtor's chapter 13 plan of arrangement:

"The debtor is required, however, under the law relating to chapter 13 proceedings to pay the full value of the security to the Douglas State Bank plus a meaningful payment on the unsecured portion of the debt. At the level of income which is available to the debtor, it seems that, in a 60–month plan, she should be able to pay all, or substantially all, of the indebtedness to the Douglas State Bank. Thus, on principles independent of fraud, it appears that the plan may be confirmed only on condition of full payment to the only scheduled creditor."

The debtor thereafter moved to alter or amend the court's order, contending that she did not have the ability to make 100% payment. On September 11, 1984, the court issued its order directing the debtor to show cause why her motion should not be denied, stating the following pertinent considerations:

"In its prior order, therefore, the court attempted to focus its concern on the fact that, in the hearing, the objecting creditor's counsel had contended that debtor had access to over $20,000 in yearly income—a contention which was not disputed or controverted by the debtor, evidentiarily or otherwise. Based on this crucial admission, the court determined that a debtor having access to more than $1,700 each month could certainly, in the absence of evidence to the contrary, be able to afford $300 per

month to pay a creditor whose indebtedness was set apart by the exceptional circumstances shown to exist in this case.

"Counsel for the debtor now denigrates this finding in language which borders on being unkind to the court, stating that it is erroneous in view of the family budget which was adverted to by debtor in the prior hearing. But the budget which was submitted by the debtor in connection with her schedules accounts for the disposition of less than $1,400 per month, an amount which clearly would leave over $300 of monthly 'available' income for disposition to the objecting creditor. Further, according to statement of affairs filed by the debtor, she also has access to a yearly income tax refund of $3,600 which does not appear to be accounted for in her monthly family budget. It was quite clearly these amounts, which appear to be clearly in excess of those accounted for in the monthly family budget, which the court intended to have disposed of or else explained in response to the court's prior order. But the debtor has responded only in a non-factual manner, thus requiring the court to make a further factual inquiry in this regard. The debtor's complaint of the delay which has ensued since the date of the hearing seems gratuitous in view of the questions which remain to be answered in spite of the court's granting an ample and explicit evidentiary opportunity in this regard. Therefore, the court is entirely justified in requiring a further factual statement in this regard—one which should have been initially given by the debtor and which almost certainly would have obviated the delay and confusion of which her counsel now complains."

In response to that order, the debtor admitted the existence of sufficient funds to make payment to the Federal Deposit Insurance Corporation in full.[1] Consequently, on October 12, 1984, this court entered a brief handwritten order denying the debtor's motion for relief from the former judgment. The obvious sense of that judicial action, in view of the considerations contained in the challenged order, was that the indebtedness to the Federal Deposit Insurance Corporation was to be fully paid over the course of the chapter 13 plan.

 Debtor's counsel, however, has written a letter to the court in which a question appears to be adumbrated as to whether full payment to the Federal Deposit Insurance Corporation is required by the court's prior order. If, the debtor desires to have credit for the handing over of the real property to the secured creditor, the appropriate value of that property must be determined by the court in an adversary or contested proceeding appropriately initiated by the debtor. Otherwise, the ruling of the court must stand to the effect that the debtor's indebtedness to the Federal Deposit Insurance Corporation must be paid 100% over the course of the plan. If it is necessary to accomplish this that some

---

1. On September 25, 1984, the debtor's counsel responded as follows to the court's prior order: "The Court, in its response to the Debtor's Motion to Amend or Alter Judgment, finds that the debtor has income which is not accounted for by comparing an estimate of the Debtor's gross income, before taxes, with her monthly budget, which reflects disposition of her net income. In reality, as set forth on the attached affidavit (in which the debtor admits that her gross income is about $2100 per month), the Debtor's gross income is greater than the Court's estimate, and was set out accurately in her schedules. The difference or discrepancy here lies in the deductions for taxes and retirement, which are not included in the monthly budget ... The Court correctly points out that the debtor has received large tax refunds in the past. When this was first discussed between Debtor and her attorney, Debtor believed that this was due to medical deductions relating to her son's foot surgery and treatment in 1982 and 1983. However, since these deductions no longer apply, it appears that this is a case of over-witholding. Therefore, there is an additional $3,000 to $3,600 per year to be considered." According to the schedules which have been filed by the debtor, the indebtedness to the Federal Deposit Insurance Corporation is $19,000, a sum which should be more than equaled by the income tax refunds which the debtor has received and will received during the course of these chapter 13 proceedings. Because these proceedings were filed in late 1983 (on the date of November 23, 1983), *it appears that refunds for the years 1983, 1984, 1985, 1986, 1987,* and *1988 will have been available* to the debtor before the 60–month duration of these chapter 13 proceedings runs out.

**156**

periodic payments be made from the monies paid into the chapter 13 trustee, the chapter 13 trustee should calculate the amounts available from the regular periodic payments and pay those over to the Federal Deposit Insurance Corporation.

It is therefore, for the foregoing reasons,

ORDERED that the chapter 13 trustee calculate and pay amounts available from regular payments to the Federal Deposit Insurance Corporation.